IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ANTHONY A. GARCIA,

       Plaintiff,

v.                                            CASE NO. 1:12-cv-84-GRJ

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

       Defendant.

_____/

# O R D E R

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for supplemental security income pursuant to Title XVI of the Social Security Act (the Act). (Doc. 1.) The Commissioner has answered, and both parties have filed briefs outlining their respective positions. (Docs. 7, 12, 13.) The parties have consented to have the undersigned U.S. Magistrate Judge conduct all proceedings in this case. (Docs. 9, 11.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for supplemental security income benefits under Title XVI of the Social Security Act on February 11, 2010 alleging a disability beginning

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this case.

February 15, 2009 due to chronic obstructive pulmonary disease ("COPD"), back pain, asthma, hepatitis, and depression. (R. 96, 105.) Plaintiff was 50 years old at the time of her alleged onset of disability, and had no prior relevant work, in part due to the fat that he had been incarcerated for most of his adult life. (R. 333.) Plaintiff's applications were denied initially and upon reconsideration. (R. 49-53, 67-71.) An administrative hearing was held before an Administrative Law Judge ("ALJ") on June 17, 2011. (R. 319-40.) On July 7, 2011, the ALJ issued a written decision finding that Plaintiff was not disabled. (R. 18-27.) The Appeals Council denied Plaintiff's request for review on March 16, 2012. (R. 6-9.) Plaintiff then filed his Complaint in this case on April 25, 2012. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against

---

[2] *See* 42 U.S.C. § 405(g) (2000).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[10]  Second, if a

---

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[11]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

---

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[21]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III.  SUMMARY OF THE RECORD

Because Plaintiff's challenge on appeal pertains only to his mental impairments,

---

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] *See id.*

the summary of the record will focus on those impairments.

## A.   <u>Medical Records</u>

 Plaintiff was treated for his mental impairments on October 1, 2009 at Meridian

Behavioral Healthcare by Sally Martinez, ARNP.  (R. 199-202.)  Ms. Martinez noted that

Plaintiff had previous psychiatric admissions, had attempted suicide, and expressed a

desire to resume taking psychiatric medication.  She found Plaintiff to have a fair mood

and pleasant affect, but suffering from paranoia and with poor insight.  Ms. Martinez

diagnosed Plaintiff with bipolar disorder and antisocial personality, and assessed his

GAF score as 40.  (R. 202.)

Plaintiff was treated by Ms. Martinez on October 29, 2009, as well as in

December 2009 and January 2010.  (R. 204, 205-208, 208.)  The treatment notes

reflect that Plaintiff was taking his medication and improving with treatment.  On

October 29, 2009, Plaintiff reported that his mood was better, and by January he

reported that he was sleeping well and that his mood was good.  Ms. Martinez also

noted that by January, Plaintiff's thought process was "much better."  (R. 208.)  On May

27, 2010, Plaintiff was treated by Ms. Martinez, who reported that he was taking his

medicine daily, had a fair appearance and normal motor behavior, but had poor insight

and judgment.  (R. 237.)

Plaintiff also underwent consultative psychological examinations and his records

were reviewed by various state agency experts.  Dr. William E. Beaty performed a

consultative psychological examination on May 25, 2010.   Dr. Beaty noted Plaintiff's

history of incarceration and mental health treatment in prison, as well as his use of

psychiatric medication.  (R. 224.)  Plaintiff reported that with respect to his activities of daily living, he is able to clean up the yard, play with his dogs, collect scrap metal, ride his bicycle, nap, and play video games.  (R. 224.)  Plaintiff was able to count backwards, skipping one number, could multiply 8x5 but not add 13+12, and could recall five digits forwards and three backwards.  (R. 225.)  Dr. Beaty found that Plaintiff had poor insight and abstractive ability, average to low average cognitive ability, and severe judgment impairment.  He diagnosed schizoaffective disorder (bipolar type), intermittent explosive disorder, dysomnia, alcohol and amphetamine abuse (in remission), cannabis dependence, and antisocial personality disorder.  (R. 225.)  Dr. Beaty opined that "[s]ustained concentration and task persistence is problematic," and noted that Plaintiff "avoids crowds and new people, [and is] comfortable with neighbors and people he is familiar with."  (R. 226.)

Dr. Thomas Conger, a state agency physician, completed a mental RFC assessment and Psychiatric Review Technique form for Plaintiff on June 3, 2010.  (R. 243-45, 247-60.)   Dr. Conger opined that Plaintiff was not significantly limited in understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  (R. 243-44.)  He provided the following functional capacity assessment: "Although the claimant's personality style may result in some social difficulties as well as a negative reaction to criticism at times, he shows the ability to relate effectively in general.  Mentally, he is capable of performing routine tasks on a sustained basis and is judged to have adequate understanding and adaptation abilities."  (R. 245.)

Dr. Conger based his PRT findings on Plaintiff's affective disorder, personality disorder, and substance addiction disorder.  (R. 247.)  He found mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation of extended duration.  (R. 257.)  Dr. Conger opined that in spite of Plaintiff's "significant history of social difficulties," he "does show the ability to relate effectively in general."  (R. 259.)  Dr. Conger also opined that Plaintiff "is judged to be capable of performing routine tasks independently and there is no indication of a mental impairment that would meet or equal any listing at this time."  (R. 259.)

## B.     Hearing Testimony

At his administrative hearing, Plaintiff testified that he last worked in 2009 planting trees.  He described his current inability to work as due mostly to his mental problems, including anti-social personality and anxiety.  Plaintiff testified that he gets along well with his fiancee, but is paranoid around strangers.  He testified that he smokes cigarettes and "[a]s much [marijuana] as [he] could in . . . a day."  (R. 330.) Plaintiff stated that his fiancee does the cooking, shopping, and housework, but that he cleans the porch and the yard, and "[w]hatever I can."  (R. 332.)  He testified that he was incarcerated for most of his adult life, and was treated for mental health issues in prison.  (R. 333-34.)  He also stated that without medication, he hears voices, has hallucinations, and experiences uncontrolled anger.  (R. 334.)

Mark A. Capps, a vocational expert, testified at the hearing that an individual with Plaintiff's RFC could perform the following occupations that existed in significant

numbers in the regional and national economies: Order Picker, Kitchen Helper, and
Cleaner II.  (R. 335-36.)

## C.     Findings of the ALJ

The ALJ found that the Plaintiff had the following severe impairments: bipolar
disorder and chronic low back pain.  The ALJ found that Plaintiff's COPD, asthma, and
hepatitis C were non-severe impairments.  The ALJ found that Plaintiff's severe
impairments did not meet or equal the listings.  At step three, the ALJ found that
Plaintiff had no restrictions in activities of daily living; moderate difficulties in social
functioning, moderate difficulties with regard to concentration, persistence, or pace; and
no episodes of decompensation of extended duration.  (R. 21.)  The ALJ determined
that Plaintiff's RFC was as follows:

> [T]he claimant has the residual functional capacity to perform medium
> work as defined in 20 CFR 416.967(c) except the claimant is limited to
> jobs involving simple, routine, repetitive tasks with up to 3-step
> commands.  The claimant is limited to jobs involving occasional
> changes in the work setting, occasional judgment and decision-making,
> no interaction with the general public, and occasional interaction with
> co-workers.

(R. 22.)

The ALJ found that Plaintiff had no past relevant work.  The ALJ found, relying
on the testimony of a vocational expert ("VE"), that there were jobs that existed in
substantial numbers in the national economy that Plaintiff could perform.  (R. 26.)
These jobs included Order Picker, Kitchen Helper, and Cleaner II.  (R. 26.)
Accordingly, the ALJ found that Plaintiff was not disabled.

## IV. <u>DISCUSSION</u>

Plaintiff raises one issue on appeal. He challenges the hypothetical posed to the VE at step five on the grounds that the ALJ did not include the findings from the psychiatric review technique regarding Plaintiff's moderate difficulties in maintaining concentration, persistence, and pace and moderate difficulties in social functioning. As a result, Plaintiff argues that the VE's testimony cannot constitute substantial evidence in support of the step five finding and therefore reversal and remand is appropriate. (Doc. 12.) For the reasons discussed below, the Court concludes that the ALJ's hypothetical questions to the VE were proper and fully accounted for Plaintiff's impairments.

Generally, when posing a hypothetical to a VE the ALJ is required to describe Plaintiff's educational level, age, work skills, experience, and all of Plaintiff's impairments included in the RFC.[22] The Social Security Administration's regulations do not obligate an ALJ to use specific wording when describing Plaintiff's impairments in these hypotheticals so long as the question accurately reflects the claimant's RFC. In order for a response to a hypothetical question to constitute substantial evidence of work available to the claimant (at step five), the question must set out all of the claimant's impairments.[23] However, in posing a hypothetical question, the ALJ is not required to include findings the ALJ properly rejects, nor must he accept the VE's

---

[22] <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999).

[23] <u>Wilson v. Barnhart</u>, 284 F3d.1219, 1227 (11th Cir. 2002).

responses to hypothetical questions that include unsupported allegations.[24]

   If an ALJ determines a claimant has moderate difficulties in concentration, persistence or pace, then the ALJ's hypothetical to a VE must account for those difficulties.[25]   The ALJ need not include, however, such limitations explicitly in the hypothetical.[26]   Instead, "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations" in concentration, persistence or pace when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work" despite those limitations.[27]   Hypotheticals also "adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise explicitly account for these limitations."[28]

   In this case the ALJ's hypothetical to the VE proposed an individual with several non-exertional limitations.   The VE opined that with those restrictions an individual could perform the following occupations in the regional and national economies:   Order Picker, Kitchen Helper, and Cleaner II. (R. 336.)   Plaintiff argues that the ALJ's hypothetical questions to the VE did not properly account for the ALJ's PRT findings, in contravention of <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176 (11th Cir. 2011).

   The Court concludes first that the ALJ's RFC determination–which Plaintiff has

---

[24] <u>Wright v. Comm'r of Soc. Sec.</u>, 327 F. App'x 135, 137 (11th Cir. 2009).

[25] <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180-81 (11th Cir. 2011.)

[26] <u>Id.</u> at 1180.

[27] <u>Id.</u>

[28] <u>Id.</u>

not challenged–properly accounted for the ALJ's findings that Plaintiff was moderately limited in concentration, persistence, and pace. The RFC appropriately accounted for these limitations by including the non-exertional limitations that Plaintiff was "limited to jobs involving simple, routine, repetitive tasks with up to 3-step commands," and was "limited to jobs involving occasional changes in the work setting, occasional judgment and decision-making." (R. 22.) The ALJ's RFC determination also properly accounted for Plaintiff's moderate limitations in social functioning, as it stated that Plaintiff would be limited to "no interaction with the general public, and occasional interaction with co-workers." (R. 22.) Each of these findings described above (as well as additional limitations) was included in the hypothetical to the VE, which described a person with the following non-exertional limitations:

> limited to jobs involving simple and routine, repetitive tasks . . . with up to three-step commands. Occasional changes in the work setting. Occasional judgment and decision-making. No interaction with the general public. And occasional interaction with co-workers.

(R. 335-36.)

Plaintiff suggests that if the ALJ does not state his paragraph B findings regarding activities of daily living, social functioning, and concentration, persistence and pace verbatim in the hypothetical to the VE, remand is required under Winschel. This argument misreads Winschel. Winschel does not require an ALJ to repeat the paragraph B findings in the hypothetical to the VE; rather, it requires the hypothetical to "adequately account" for those findings, whether through a restriction to unskilled work

or by otherwise "implicitly" accounting for the claimant's restrictions.[29] The ALJ's hypothetical to the VE clearly accounted for Plaintiff's moderate mental limitations. The ALJ, in turn, appropriately considered the VE's testimony that the hypothetical individual could perform work as an Order Picker, Kitchen Helper, or Cleaner II.

The ALJ's findings are also consistent with the medical evidence of record. The treatment notes from Ms. Martinez, the ARNP that treated Plaintiff at Meridian, reflected that his mental condition was improving with medication. (R. 204-08.) While consultative psychologist Dr. Conger opined that Plaintiff had mild restrictions in activities of daily living, R. 257, the ALJ's finding that Plaintiff had no restrictions in activities of daily living was supported by Plaintiff's own testimony at the hearing regarding his ability to clean his home and do other household chores. (R. 332.) The ALJ's finding was also supported by Plaintiff's representation to consultative examining psychologist Dr. Beaty that he is able to clean up the yard, play with his dogs, collect scrap metal, ride his bicycle, nap, and play video games. (R. 224.) The ALJ's finding that Plaintiff was moderately limited in social interaction was supported by Plaintiff's testimony that he is paranoid around strangers, R. 330, and by Dr. Beaty's note that Plaintiff "avoids crowds and new people, [and is] comfortable with neighbors and people he is familiar with." (R. 226.) Dr. Conger also found that Plaintiff had moderate difficulties in social interaction. (R. 257.) Finally, while Dr. Conger found that Plaintiff had only mild difficulties in maintaining concentration, persistence, and pace, R. 257,

---

[29] Id.

the ALJ found that Plaintiff had moderate difficulties in concentration, persistence, and pace, which was consistent with Dr. Beaty's opinion that "[s]ustained concentration and task persistence is problematic." (R. 226.)

Accordingly, the Court concludes that the ALJ did not err at step five, that the ALJ's step five determination is supported by substantial evidence and therefore the decision of the Commissioner is due to be affirmed.

## V. CONCLUSION

In light of the foregoing it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment and close the file.

**DONE AND ORDERED** this 22nd day of April 2013.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge